COMMONWEALTH *vs.* SHAWNDELL WATTS.

No. 08-P-1320.

Hampden. April 8, 2009. - June 26, 2009.

Present: VUONO, MEADE, & FECTEAU, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Motor vehicle, Trained dog. *Constitutional Law,* Search and seizure.

A trial court judge erred in granting a criminal defendant's motion to suppress evidence seized from his person and from the motor vehicle he had been operating when stopped by police, where, after the proper stop of the vehicle due to the defendant's failure to stop at a stop sign in violation of G. L. c. 89, § 9, the continued detention of the properly licensed defendant, while the police investigated the vehicle's expired rental agreement and summoned a canine unit, was reasonable and proportional to the unfolding circumstances that suggested the defendant's involvement in criminal activity beyond the violation for which he was initially detained. [516-520]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on March 14, 2007.

A pretrial motion to suppress evidence was heard by *Nancy Dusek-Gomez,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

*Daniel M. Sandell* for the defendant.

MEADE, J. The defendant, having been charged with possession of class B and class D controlled substances in violation of G. L. c. 94C, § 34, moved to suppress evidence seized from his person and from the motor vehicle he had been operating when stopped by the police. After conducting an evidentiary hearing,

the judge made findings and allowed the motion to suppress. After receiving leave from a single justice of the Supreme Judicial Court, see Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), the Commonwealth appeals from the judge's order. We reverse.

1. *The suppression hearing.* We recite the facts taken from the judge's findings, supplemented by uncontroverted facts adduced at the hearing that were explicitly or implicitly credited by the judge, in order to complete the sequence of the events in this case. See *Commonwealth* v. *Butler*, 423 Mass. 517, 518 n.1 (1996); *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337-338 (2007). On March 13, 2007, at approximately 10:30 P.M., State Trooper Sean Barry was driving on St. James Avenue in Springfield in an unmarked police cruiser behind the defendant, who was operating a Chevrolet Impala. When the defendant failed to come to a complete stop at an intersection marked with a stop sign, Barry activated his lights and pulled the car over. There was one passenger in the car, David Gainey, seated in the front passenger seat. Upon request, the defendant provided Barry with a valid driver's license and, in lieu of a registration, a rental agreement from Enterprise Rent-A-Car Company (Enterprise). From his vantage point outside the driver's door, Barry could see Dutch Masters cigars and laundry dryer sheets on the floor of the car's back seat area. Although these items were not inherently incriminating, Barry knew that Dutch Masters are often used to smoke marijuana and that dryer sheets are often employed to mask the odor of marijuana. However, Barry did not smell marijuana or see signs of drug use.

Upon a closer examination of the rental agreement, Barry saw that it was expired and that the car was overdue by one day. When Barry made an inquiry of the vehicle through the National Criminal Information Center (NCIC), it was revealed that the same car had been "queried" by the Barnstable police department within the last thirty days. Through another trooper with whom he worked, Barry had specific knowledge of narcotics being transferred between Springfield and Barnstable through the use of rental cars. At this point, Barry requested that a canine unit be dispatched to the scene. Barry's partner, Trooper Gallant, was able to contact Enterprise and confirm that the rental agreement

516      74 Mass. App. Ct. 514 (2009)

Commonwealth *v.* Watts.

for the car had expired the day before. According to the defendant, a trooper asked for the car keys, which the defendant provided, and the trooper told him that Enterprise did not "want [the defendant] in the vehicle." After this exchange, State Trooper Brian Gladu arrived with the canine.

Trooper Gladu placed a "drug collar" around the dog's neck, which, along with verbal commands, indicates to the dog that he will attempt to smell the presence of drugs. When Gladu walked the dog around the car's exterior, the dog stopped at the driver's door and jumped at the window, which indicated the presence of either marijuana or narcotics. Gladu then instructed Barry and Gallant to remove the defendant and Gainey from the car to permit the dog to smell the car's interior. Inside the car, the troopers found a plastic bag of "crack" cocaine in the area where the defendant had been reaching. When the defendant was pat frisked, marijuana was found in his pocket.

2. *The judge's decision.* The judge determined that the initial stop of the defendant for the motor vehicle infraction was lawful. However, she held that

> "[o]nce the license was produced and there was no report that the car was reported stolen, this driver should have been sent on his way with a citation. The cigars and dryer sheets are items commonly sold and owned for innocent purposes. There was no odor of marijuana or other observations to link these items to possible use with controlled substances. Detaining the driver for 15 minutes or 1 hour beyond the point of checking the license and car status was not justified. The search was unlawful and the fruits of the search will be suppressed."[1]

3. *Discussion.* When reviewing a motion to suppress, we afford substantial deference to the motion judge's subsidiary findings of fact and will not disturb them absent clear error. *Commonwealth* v. *Jones,* 375 Mass. 349, 354 (1978). "Our review of the application of constitutional principles to those facts, however,

---

[1]Without making a specific finding as to the duration of the encounter, the chosen range was most likely based on the judge having noted that "Trooper Barry testified that the stop and search was conducted within 15-20 minutes . . . [and the defendant] and Mr. Gayney [*sic*] testified that they were detained over an hour." As the judge chose one hour as the end of the range, she implicitly did not credit the testimony that the encounter lasted longer.

is plenary." *Commonwealth* v. *Kaupp*, 453 Mass. 102, 105 (2009). See *Commonwealth* v. *Catanzaro*, 441 Mass. 46, 50 (2004). The initial stop of the defendant's vehicle was, as the judge properly found, justified in this case because the trooper saw the defendant's failure to stop at a stop sign in violation of G. L. c. 89, § 9. *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001). The only issue presented here is whether the continued detention of the properly licensed defendant, while the police investigated the car's expired rental agreement and summoned a canine unit, was reasonable and proportional to the unfolding circumstances that suggested the defendant's involvement in criminal activity beyond the violation for which he was initially detained.

Under art. 14 of the Massachusetts Declaration of Rights, the touchstone of our analysis of police conduct that results in a search or seizure is whether that conduct was reasonable. See *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989). The reasonableness of the particular conduct at issue here involves an evaluation of whether the police exceeded the permissible scope of the stop, which is an issue of proportion. *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 323 (2001). "The degree of suspicion the police reasonably harbor must be proportional to the level of intrusiveness of the police conduct." *Ibid.*, quoting from *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996). "In order to expand a threshold inquiry of a motorist and prolong his detention, an officer must reasonably believe that there is further criminal conduct afoot, and that belief must be based on 'specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience.' " *Commonwealth* v. *Feyenord*, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006), quoting from *Commonwealth* v. *King*, 389 Mass. 233, 243 (1983).

The judge determined that whether the duration of the stop was fifteen minutes or one hour, once the defendant produced a valid license and the police had no report that the car was stolen, the police were required to send the defendant on his way with a citation for the motor vehicle infraction. If the defendant's driving documents had been in order, we would agree. But they were not.[2] Although found by the judge and undisputed by the parties,

---

[2] It is important to distinguish this case from the cases on which the defend-

the judge seemingly ignored the fact that the rental agreement for the car had expired. This supports an articulable suspicion beyond the scope of the initial stop, justifying further investigation into the defendant's authority to operate the car. See G. L. c. 90, § 24(2)(a). Telephoning Enterprise to determine the status of the car was reasonable and proportionate to the circumstances. Compare *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 6 (2005).

When the police made contact with Enterprise, they were informed that the rental company no longer authorized the defendant's use of the rental car.[3] At this point, which, according to the defendant, occurred before the canine unit arrived, the police could have impounded the vehicle.[4] See *Commonwealth* v. *Henley*, 63 Mass. App. Ct. at 5 (police properly impounded rental car on highway where neither the driver nor the passengers were authorized by the rental agreement to operate the car). Permitting the defendant to remain in the car until the canine unit arrived was also a reasonable and proportionate response to what had unfolded in these circumstances.

Furthermore, although the police could have impounded the vehicle because the defendant was no longer authorized to use the rental car, the police were not required to immediately take those actions. Instead, given the escalating suspicion that emerged over the course of the stop, it was reasonable for them to utilize

---

ant relies where the driver of a vehicle stopped for a traffic violation produces a valid driver's license and registration. See *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978); *Commonwealth* v. *Loughlin*, 385 Mass. 60, 61-62 (1982). "Where an officer conducts an uneventful threshold inquiry giving rise to no further suspicion of criminal activity, he may not prolong the detention or expand the inquiry." *Commonwealth* v. *Feyenord*, 445 Mass. at 78 n.5. See *Commonwealth* v. *King*, 389 Mass. at 243-244; *Commonwealth* v. *Torres*, 424 Mass. 153, 158-159 (1997).

[3]The Commonwealth did not argue, and we therefore do not address, the issue whether the defendant had a reasonable expectation of privacy in a vehicle that he did not own and was not authorized to operate. See *Commonwealth* v. *Henley*, 63 Mass. App. Ct. at 5 n.6, citing *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714-715 (1986); *Commonwealth* v. *Carter*, 424 Mass. 409, 411-412 (1997) ("defendant has the burden of establishing that the government has intruded on his . . . reasonable expectation of privacy, thus establishing that a search has taken place").

[4]We need not decide whether the fact that Enterprise no longer authorized the defendant to operate the rental car provided the police with probable cause to arrest him for use of a motor vehicle without authority in violation of G. L. c. 90, § 24(2)(a).

the drug-detecting canine. See *Commonwealth* v. *Sinforoso*, 434 Mass. at 323. In circumstances more compelling than in *Feyenord*, where the type of criminal activity that might have been "afoot" was "decidedly uncertain," see *Commonwealth* v. *Feyenord*, 445 Mass. at 80, the suspicion here was specifically related to drug activity. As the judge found, there was a box of cigars and dryer sheets in the car. While the judge is correct that cigars and dryer sheets are commonly used for lawful purposes, it is also true that "a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief." *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991). See *Commonwealth* v. *Isaiah I.*, 450 Mass. 818, 824 (2008). The otherwise innocent presence of cigars and dryer sheets must be evaluated along with Trooper Barry's articulated knowledge that Dutch Masters cigars are often used to smoke marijuana and that dryer sheets are often employed to mask the odor of marijuana.

In addition, the judge found that the Barnstable police had "queried" the car within the last thirty days. This fact implies that the car had recently drawn enough attention from the Barnstable police to trigger a license plate check. These facts and inferences gain significance when coupled with Barry's testimony that he knew that rental cars were being used to transport narcotics between Springfield and Barnstable.

Faced with facts supporting his suspicion that the defendant was involved in criminal activity, and that the defendant was no longer authorized to use the rental car, Barry was permitted to exercise his judgment as to what resources were available to him and diligently pursued a means of investigation that was likely to confirm or dispel his suspicion of drug activity. See *United States* v. *Sharpe*, 470 U.S. 675, 686 (1985); *Commonwealth* v. *Feyenord*, 445 Mass. at 80. Requesting a canine unit was a reasonable and less intrusive alternative to immediately impounding the vehicle or conducting a full search of the car. See *Commonwealth* v. *Sinforoso*, 434 Mass. at 324. The fact that the duration of the stop was no longer than one hour also supports the reasonableness of the troopers' actions.[5] Judicial second-guessing of that exercise of judgment, especially in a rapidly developing situation,

---

[5]In *Commonwealth* v. *Feyenord*, 445 Mass. at 78-81, the court determined

is inappropriate. See *United States* v. *Sharpe, supra*; *Commonwealth* v. *Feyenord, supra*. Finally, once the dog indicated the presence of narcotics in the car, the police had probable cause to search it. *Commonwealth* v. *Sinforoso, supra*. The marijuana found in the defendant's pocket was properly seized incident to his arrest. See *Commonwealth* v. *Clermy*, 421 Mass. 325, 328 (1995). The order suppressing the marijuana and cocaine was erroneous.

4. *Conclusion*. The order allowing the defendant's motion to suppress is reversed, and the matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

that the thirty-minute stop was not unreasonable. There, the defendant driver did not produce a valid driver's license and the car was registered to another person, but there was no indication that the defendant was not authorized to use the vehicle, and the type of criminal activity he may have been involved in was uncertain. As noted by the court, *id.* at 81 n.11, some jurisdictions have found detention lasting more than sixty minutes to be reasonable under the circumstances. See *ibid.*, citing *United States* v. *McCarthy*, 77 F.3d 522, 532 (1st Cir.), cert. denied, 519 U.S. 991 (1996), and cert. denied sub nom. *Hunter* v. *United States*, 519 U.S. 1093 (1997) ("seventy-five minutes reasonable where defendant gave evasive responses to official inquiries"); *State* v. *Moffatt*, 450 N.W.2d 116, 118-119 (Minn. 1990) ("sixty-one minute stop permissible"). See also *United States* v. *Vega*, 72 F.3d 507, 515-516 (7th Cir. 1995), cert. denied sub nom. *Early* v. *United States*, 518 U.S. 1007 (1996) (upholding sixty-two-minute stop); *United States* v. *Soto-Cervantes*, 138 F.3d 1319, 1322-1324 (10th Cir.), cert. denied, 525 U.S. 853 (1998) (detention for sixty-five minutes permissible where, apart from initial investigation of drug activity, police suspected defendant was an illegal alien, requiring further investigation with immigration officials).