# Commonwealth *vs.* Antwan Lawson.

No. 09-P-101.

Suffolk. December 2, 2010. - April 25, 2011.

Present: Cypher, Grasso, & Mills, JJ.

*Controlled Substances. Motor Vehicle. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile, Expectation of privacy, Probable cause. *Constitutional Law,* Search and seizure, Privacy, Probable cause.

This court declined to consider the issue, raised by the Commonwealth for the first time on appeal from the denial of a criminal defendant's pretrial motion to suppress evidence, whether the defendant lacked a reasonable expectation of privacy in a rented automobile that he was not authorized by the car rental agency to drive. [325-327]

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress evidence discovered by police during a search (conducted with the aid of a drug-sniffing dog) of the interior of a rented automobile that the defendant had been driving, where the defendant's inability to provide a valid driver's license, nervous behavior, and possession of a large bundle of cash; the presence of multiple air fresheners; and the defendant's record of prior drug distribution arrests provided probable cause to search the vehicle (with or without a drug-sniffing dog). [327-328]

Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on October 19, 2007.

A pretrial motion to suppress evidence was heard by *Tracy-Lee Lyons,* J., and the case was tried before *Robert P. Ziemian,* J.

*Kathryn Karczewska Ohren* for the defendant.

*Teresa K. Anderson,* Assistant District Attorney, for the Commonwealth.

Cypher, J. The defendant, Antwan Lawson, appeals from convictions of various drug and motor vehicle violations,[1]

[1]He was convicted by a Boston Municipal Court jury of (1) possession with

arguing that the motion judge should have allowed his motion to suppress evidence. The defendant also raises other trial-related issues. We affirm.

*The motion to suppress.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). Where appropriate, we supplement the judge's findings with uncontradicted and uncontroverted testimony from the record of the suppression hearing. *Commonwealth* v. *Watson,* 430 Mass. 725, 726 n.5 (2000). The motion judge fully credited the testimony of Massachusetts Bay Transportation Authority (MBTA) police Officer Douglas Morgan, Boston police Officer Joseph Fisher, and MBTA police Officer Kevin Foley[2] and the facts are not in dispute. Rather, the defendant argues that the facts do not support a conclusion that the police had a requisite basis to detain the defendant for inquiry or to pat frisk him, and that the police did not have probable cause to search the vehicle. "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996).

On October 18, 2007, at approximately 9:30 P.M., Officer Morgan and his partner Officer Foley were driving along Dorchester Avenue in the Dorchester section of Boston. Officer Morgan described the area as one known for drug violations, violent crimes, and shootings. He stated that there were shootings in Wainwright Park and that he had arrested an individual for robbery on Semont Road. As Officer Morgan continued along Dorchester Avenue, he noticed a Dodge Charger automobile in a crosswalk at Semont Road. The vehicle was stopped with its lights on and its motor running. Its rear end was in the crosswalk "sticking into Dorchester Avenue." He looked at the registration plate and remembered that it was one posted by the

---

intent to distribute marijuana (subsequent offense); (2) possession with intent to distribute near a school, G. L. c. 94C, § 32J; and (3) use of a motor vehicle without authority, G. L. c. 90, § 24(2)(*a*).

[2]The judge specifically did not credit the defendant's girlfriend.

Boston police for field interview observation purposes in connection with a shooting that had occurred earlier in the week. The notification received by Officer Morgan indicated the type of vehicle, the registration plate number, and that it was a rental vehicle.

Officer Foley parked two to three feet behind the vehicle on Dorchester Avenue. Officer Morgan exited the cruiser and walked to the driver's side and asked the driver for his license and registration. The driver, later identified as the defendant, reached for the registration "real quick" and gave the officer a car rental agreement. Officer Morgan asked him again for his license. At this time, Officer Morgan described the defendant as nervous and observed that his hands were shaking. He also noted that the vehicle was extremely clean and reeked of air freshener. Six air fresheners were strewn about the front and back seats and the floor of the vehicle.

Officer Morgan observed a large amount of cash (approximately one inch thick) "wrapped up with credit cards and I.D.'s sitting on the center console." The officer again asked the defendant for his license but the defendant was hesitant to retrieve it. Officer Morgan could clearly see the defendant's identification card in plain view on the console.

The rental agreement had the name of one person, a female, with the last name Maxwell. The defendant was not authorized as a person who could drive the Dodge Charger. The defendant finally gave the officer an identification card. Officer Morgan ran the information on his mobile data terminal and learned that the defendant's license to operate a motor vehicle had been revoked.

Officer Morgan asked the defendant to exit the vehicle and arrested him for operating a vehicle after revocation of his license and use without authority. He also gave him a traffic citation for parking in a crosswalk.

Officer Morgan was concerned for his safety because he knew that the vehicle had been identified by the Boston police for possible involvement with a shooting, that the occupants were to be inquired of, and that the defendant had a criminal record (specifically, firearm possession and possession with intent to distribute class B and class D substances). Moreover,

he observed that the defendant was nervous, his hands were shaking, and he was reluctant to produce his identification.

Describing his experience with past arrests of individuals who use or distribute narcotics, Officer Morgan stated they usually use air fresheners to try to disguise the smell of controlled substances. Officer Morgan called for assistance from a drug-sniffing canine, and Officer Fisher arrived with his dog, Tiburon. The dog alerted Officer Fisher to an area in the interior lining of the roof by the windshield on the driver's side where police recovered a bag of marijuana (later determined to weigh fifty-two grams). A one hundred dollar bill was found inside the vehicle on the floor.

At booking, fourteen sets of bundled money (totalling $1,700) were found in the defendant's pocket. The vehicle was searched and inventoried pursuant to the Boston police inventory policy.

*Discussion.* Analysis of whether a defendant's art. 14 or Fourth Amendment rights have been violated sometimes begins with a determination whether the defendant has demonstrated that there has been a "search in the constitutional sense," in other words, whether the defendant has a reasonable expectation of privacy. See *Commonwealth* v. *Carter,* 424 Mass. 409, 411 (1997), quoting from *Commonwealth* v. *Montanez,* 410 Mass. 290, 301 (1991). See also, e.g., *Commonwealth* v. *D'Onofrio,* 396 Mass. 711, 714-715 (1986). Some cases begin with the question whether a defendant has standing to assert a reasonable expectation of privacy.[3] See, e.g., *Montanez, supra* at 300; *Commonwealth* v. *Morrison,* 429 Mass. 511, 513 (1999). See also

---

[3]"When a motion to suppress evidence is made in a criminal case on the ground that the evidence was obtained in violation of the Fourth Amendment, there may be put in issue the question whether the movant is a proper party to assert the claim of illegality and to seek the remedy of exclusion. This question is ordinarily characterized as one of whether the party has 'standing' to raise the Fourth Amendment contention." 6 LaFave, Search and Seizure § 11.3, at 126 (4th ed. 2004). In other words, the party must establish "a personal stake in the outcome of the controversy." *Ibid.,* quoting from *Baker* v. *Carr,* 369 U.S. 186, 204 (1962).

A search in the constitutional sense exists when the defendant establishes a reasonable expectation of privacy. "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Montanez, supra* at 301.

*Minnesota* v. *Carter,* 525 U.S. 83, 89 (1998). See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 3-4[1] (2010). Standing and the question of a reasonable expectation of privacy are "interrelated" concepts but are considered separately. *Commonwealth* v. *Williams,* 453 Mass. 203, 207-208 (2009). See *Commonwealth* v. *Frazier,* 410 Mass. 235, 244 n.3 (1991) ("we think it is best to separate the issue of standing from the question whether there has been a search for constitutional purposes").

The Commonwealth argues, for the first time, that the defendant had no expectation of privacy in the vehicle, and therefore there was no search in a constitutional sense when the officer searched the interior of the vehicle with a drug sniffing dog.

Here, because the defendant was charged with possessory offenses, the doctrine of automatic standing applies and the defendant may challenge the search. *Commonwealth* v. *Mubdi,* 456 Mass. 385, 392 (2010). However, a defendant does not have a reasonable expectation of privacy where he has no right to be in the house or automobile where the evidence is found. *Id.* at 393 n.8. See *Commonwealth* v. *Carter,* 424 Mass. at 411-412. The defendant thus was in the position of a trespasser.[4] See *id.* at 412 (art. 14 of the Massachusetts Declaration of Rights "does not relieve a defendant who unlawfully intruded on someone else's reasonable expectation of privacy from establishing that he had a reasonable expectation of privacy himself"). Moreover, "[a] defendant may not 'assert the constitutional rights of someone in no way involved with his allegedly criminal conduct.' " *Commonwealth* v. *Rise,* 50 Mass. App. Ct. 836, 841 (2001), quoting from *Commonwealth* v. *Carter,* 424 Mass. at 411 n.3. Although the defendant may have had automatic standing, he did not have a reasonable expectation of privacy in the automobile that he was

---

[4]That the defendant's affidavit alleged that he had the permission of the lessee to drive the automobile may establish his entitlement to a hearing, but it does not constitute evidentiary proof. Only the rental company could authorize the defendant to drive the vehicle. "The affidavit is not evidence and may not be considered by the judge for purposes of deciding the motion to suppress. The permissible findings of fact at the evidentiary hearing must find support in the evidence — the testimony and exhibits, which have been introduced in evidence at the suppression hearing." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 2-3[d][3], citing *Commonwealth* v. *Ellerbe,* 430 Mass. 769, 776, n.12 (2000).

not authorized by the car rental agency to drive.[5] Whether a defendant has a reasonable expectation of privacy may not be challenged for the first time on appeal by the Commonwealth, however. *Commonwealth* v. *Rodriguez*, 456 Mass. 578, 589 (2010). See *Commonwealth* v. *Martinez*, 74 Mass. App. Ct. 240, 249 (2009) (Commonwealth waived reasonable expectation of privacy argument by not raising it before motion judge). Thus, the Commonwealth waived this argument. We examine whether the Commonwealth has established that the warrantless search of the vehicle satisfied the Fourth Amendment and art. 14, and we conclude that it did.

The defendant argues that there was no justification for a search for narcotics or for a search of the interior of the vehicle with a drug-sniffing dog. We disagree.

Here, where the defendant was unable to provide a valid driver's license, demonstrated nervous behavior, possessed a large bundle of cash, had multiple air fresheners in the vehicle,[6]

---

[5]*Mubdi* states that even if a defendant has automatic standing, he "still must show that there was a search in the constitutional sense, that is, that *someone* had a reasonable expectation of privacy in the place searched." *Mubdi, supra* at 393 (emphasis in original). However, in *Commonwealth* v. *Carter*, 424 Mass. at 411, the Supreme Judicial Court stated that whether a search in the constitutional sense has taken place " 'turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy' of the *defendant*," quoting from *Commonwealth* v. *Montanez*, 410 Mass. at 301 (emphasis supplied). See *Carter, supra* at 410 ("We . . . consider [the defendant's] argument that, if a defendant has automatic standing to challenge the seizure of property, the defendant need not also establish that he had a reasonable expectation of privacy in the area searched. The defendant contends that, if he has automatic standing and if someone else, anyone, had a reasonable expectation of privacy in the area searched at the time it was searched and that person's constitutional rights were violated, the evidence must be suppressed. The defendant reads our cases too broadly"). See *Commonwealth* v. *D'Onofrio*, 396 Mass. at 714 (defendant bears burden of proving that there was a search in constitutional sense; that he had reasonable expectation of privacy); *Montanez, supra* at 301 (defendant has burden to prove that there was search in constitutional sense even when defendant has automatic standing). See also *Minnesota* v. *Carter*, 525 U.S. at 88. We need not resolve the tension between these cases, however, as the defendant was not an authorized driver. *Mubdi, supra* at 393 n.8 ("There is an exception to automatic standing where the defendant had no right to be in the house or automobile where the evidence was found").

[6]Just as "[t]he courts have found probable cause to search when the distinctive odor of marijuana is found emanating from a particular place, [also] the

and had a record of prior arrests for drug distribution, there was probable cause to search the vehicle, with or without a drug-sniffing dog.[7] See *Commonwealth* v. *Watts,* 74 Mass. App. Ct. 514, 518-519 (2009). See also *Commonwealth* v. *Cast,* 407 Mass. 891, 900 (1990) ("It was in keeping with drug traffickers' practice of using rented vehicles rather than their own, in order to protect their anonymity if the police do become suspicious and run a license check, and in order to shield the vehicles they own from seizure and impoundment").[8] Accordingly, the motion to suppress was properly denied.

---

smell of a . . . masking agent . . . together with other suspicious circumstances, may add up to probable cause." 2 LaFave, Search & Seizure § 3.6(b), at 311-312. See *Commonwealth* v. *Watts,* 74 Mass. App. Ct. 514, 515 (2009) (reasonable suspicion based in part on fabric softener dryer sheets). See also *United States* v. *Gutierrez-Espinosa,* 516 F.2d 249, 250 (9th Cir. 1975) (strong odor of deodorizer was relevant to defendant's knowledge of presence of marijuana in vehicle); *United States* v. *Reyna,* 546 F.2d 103, 103 (5th Cir. 1977) (discernible scent of air freshener combined with additional factors created probable cause); *United States* v. *Patterson,* 65 F.3d 68, 71 (7th Cir. 1995) (probable cause existed to search vehicle, partly based upon heavy odor of air freshener); *United States* v. *McCoy,* 200 F.3d 582, 584 (8th Cir. 2000); *United States* v. *West,* 219 F.3d 1171, 1178-1179 (10th Cir. 2000) ("The Tenth Circuit has consistently held that the scent of air freshener is properly considered as a factor in the probable cause analysis"); *United States* v. *Ramos-Caraballo,* 375 F.3d 797, 799 (8th Cir. 2004) (an air freshener provided probable cause). See also *United States* v. *Parada,* 289 F. Supp. 2d 1291, 1302 (D. Kan. 2003); *Nathan* v. *State,* 805 A.2d 1086, 1096 (Md. 2002). Cf. *United States* v. *$129,727,* 129 F.3d 486, 491 (9th Cir. 1997) (nexus between fabric softener and drug trafficking is recognized to be of great probative value).

[7] Even if only reasonable suspicion existed, the search of the vehicle with a drug-sniffing dog was proper. See *Commonwealth* v. *Sinforoso,* 434 Mass. 320, 324 (2001) (use of narcotics-sniffing dog that entered motor vehicle for which there was reasonable suspicion of narcotics activity was proportional and less intrusive alternative to full search of vehicle); *Commonwealth* v. *Feyenord,* 445 Mass. 72, 78-79 (2005), cert. denied, 546 U.S. 1187 (2006) (use of drug-sniffing dog proper where circumstances — that defendant was nervous, supplied inconsistent answers, and was unable to produce a valid driver's license — provided reasonable suspicion that the defendant was involved in criminal activity). That the defendant was not authorized to use the rental car also supported use of the dog. See *Commonwealth* v. *Watts,* 74 Mass. App. Ct. at 519.

[8] The Commonwealth also argues that the marijuana would have been discovered at a later inventory search. See *Commonwealth* v. *O'Connor,* 406 Mass. 112, 115 (1989). The judge found that the vehicle was searched and monitored pursuant to the Boston police inventory policy. We need not reach the issue.

*Remaining issues.* The defendant raises several other issues, including sufficiency of the evidence, ineffective assistance of counsel, and improper closing argument. We have considered them and conclude that the evidence was sufficient, that counsel was not ineffective, and that there has been no error.

> *Order denying motion to suppress affirmed.*
>
> *Judgments affirmed.*