## COMMONWEALTH *vs*. CHRISTOPHER WRIGHT.

No. 13-P-199.

Hampshire. March 11, 2014. - May 29, 2014.

Present: TRAINOR, BROWN, & MEADE, JJ.

*Search and Seizure,* Motor vehicle, Reasonable suspicion, Threshold police inquiry. *Constitutional Law,* Search and seizure, Reasonable suspicion. *Threshold Police Inquiry. Practice, Criminal,* Motion to suppress. *Controlled Substances.*

A Superior Court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence seized by a State police trooper during the stop of a motor vehicle being driven by the defendant, where, viewing the facts and circumstances as a whole, given the past narcotics convictions of the defendant and a passenger, the strong odor of air freshener, and their presence in a leased vehicle registered in a State where neither of them resided, the trooper had reasonable suspicion that further criminal conduct (drug activity) was afoot sufficient to expand the scope of his investigation beyond the threshold inquiry of a routine traffic stop; where the duration of the stop (forty minutes) was not prolonged or onerous; where the officer could properly have ordered the defendant and the passenger to exit the vehicle based on their criminal histories; and where, once a police dog indicated the presence of drugs, the trooper had probable cause to search the vehicle. [382-385]

INDICTMENT found and returned in the Superior Court Department on November 15, 2011.

A pretrial motion to suppress evidence was heard by *C. Jeffrey Kinder,* J., and the case was tried before *Richard J. Carey,* J.

*Jennifer Petersen* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a jury of trafficking in cocaine.[1] On appeal, he challenges only the motion judge's order denying his motion to suppress, contending that the State

---

[1]A second charge, for conspiracy to violate the drug laws, was nolle prossed.

trooper exceeded the permissible scope of a routine traffic stop. We affirm.

*Background.* We summarize the facts the motion judge found, supplemented with uncontested evidence from the motion hearing merely to provide context. See *Commonwealth* v. *Johnson,* 82 Mass. App. Ct. 336, 337 (2012). On September 20, 2011, Trooper Brendan Shugrue observed a grey Nissan following very closely behind a white Toyota. Shugrue followed the Nissan, and further observed that the vehicle had tinted windows and New Jersey license plates. Shugrue pulled over the vehicle for following too closely.

While at the side of the vehicle, Shugrue smelled a strong odor of air freshener. The defendant was driving, and Mitchell Degroat was a passenger. Shugrue explained why he had pulled over the vehicle and asked the defendant for his driver's license. The defendant produced a New York license and stated that he and the passenger were traveling to Vermont to visit the defendant's niece. Degroat professed to own the vehicle, but produced a New Jersey registration indicating that a leasing company was the owner. When Shugrue asked Degroat for identification, he produced an expired, faceless New York driver's permit. Throughout this encounter, Degroat did not make eye contact with Shugrue. Shugrue then returned to his cruiser to issue the defendant a written warning. Before completing the paperwork, he called for backup to watch the Nissan, as he could not see into the vehicle while sitting in his cruiser, due to the tinted windows on the Nissan. Trooper William Loiselle arrived about ten minutes later.

While in his cruiser, Shugrue conducted a warrant check on Degroat and the defendant. He noticed that they lived in different boroughs of New York City. He also became aware of a thirty-one year age difference between them. The warrant check revealed extensive criminal histories of both occupants. Shugrue discovered that the defendant had convictions for illegal drug sales and possession of stolen firearms.[2] Most notably, in 2010 the defendant had received a three-year sentence for a controlled substance offense in Vermont, for which, Shugrue concluded, he

---

[2] Degroat also had convictions for illegal drugs and weapons offenses.

was probably on parole.[3] Based on this information, and his observations at the side of the vehicle, Shugrue called the canine unit for assistance.

Trooper Brian Gladu and his canine partner "Dash" arrived within twenty minutes. Upon Gladu's arrival, Shugrue asked the defendant to exit the vehicle. The defendant complied, and consented to a patfrisk of his person, but because he did not own the vehicle, he would not consent to an automobile search. At that point, Gladu placed a drug collar on Dash and began to walk towards the vehicle.

At the vehicle, Dash "alerted" aggressively at the driver's door. Gladu then ordered Degroat out of the vehicle and allowed Dash to search the interior. Once inside the vehicle, Dash alerted to a black bag located on the back seat. Gladu opened the bag and discovered two bags of cocaine and one container of Inositol, a cutting agent. A subsequent search of the trunk uncovered a digital scale with white powder residue and several prescription bottles, all bearing the defendant's name. Both the defendant and Degroat were arrested.

The defendant moved to suppress the evidence seized during the traffic stop. He argued that the officer lacked reasonable suspicion to detain him, and that the search of the vehicle was impermissible. The judge denied the motion, and the defendant was convicted of trafficking in cocaine.

*Discussion.* In review of a decision on a motion to suppress, we accept, absent clear error, the motion judge's subsidiary findings, but independently review his ultimate findings and conclusions of law. See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). The defendant argues that, once he produced a valid license and registration, the officer's inquiry should have ended. See *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997) ("It is well settled that a police inquiry in a routine traffic stop must end on the production of a valid license and registration"). See also *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). The defendant's argument misses the mark.

This case is controlled in material respects by *Commonwealth*

---

[3]At that time, there were still two years remaining on the defendant's Vermont sentence.

v. *Feyenord,* 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006). "In evaluating whether the police exceeded the permissible scope of a stop, the issue is one of proportion." *Ibid.,* quoting from *Commonwealth* v. *Sinforoso,* 434 Mass. 320, 323 (2001). In order to expand the threshold inquiry of a routine traffic stop, an officer must have a reasonable suspicion, based on specific and articulable facts, that further criminal conduct is afoot. See *Commonwealth* v. *Feyenord, supra.* See also *Commonwealth* v. *Watts,* 74 Mass. App. Ct. 514, 517 (2009); *Commonwealth* v. *Lawson,* 79 Mass. App. Ct. 322, 328 n.7 (2011).

In this case, Shugrue conducted a threshold inquiry in which the defendant, a New York resident, produced a valid driver's license, but the passenger, also a New York resident and purported owner of the vehicle, produced an expired, faceless New York driver's permit and a New Jersey registration listing a third party as the owner of the Nissan. This provided Shugrue a sufficient basis on which to investigate the occupants' credentials.[4] See *Commonwealth* v. *Goewey,* 452 Mass. 399, 407 (2008) (defendant-passenger's production of an expired license bearing a photograph that did not resemble him "reasonably raised the officer's suspicions").

Furthermore, the warrant check bolstered Shugrue's suspicion. The fact that the defendant previously had been convicted of controlled substance offenses and illegal firearms possession, and was traveling to a jurisdiction where he was very likely on parole for a controlled substance violation, provided the officer with reasonable suspicion to believe that the defendant was involved in criminal activity. See *Commonwealth* v. *Dasilva,* 66 Mass. App. Ct. 556, 561 (2006) ("this court has allowed . . . knowledge of a person's arrest record or unspecified 'criminal conduct' to be considered in a reasonable suspicion evaluation"). See also *Commonwealth* v. *Watts,* 74 Mass. App. Ct. at 519; *Commonwealth* v. *Lawson,* 79 Mass. App. Ct. at 328.

---

[4] We decline to address the propriety of Shugrue's request that another officer monitor the suspects while he performed a records check, as that does not factor into the reasonable suspicion analysis at that juncture. In any event, Trooper Loiselle's observations, if any, are immaterial, as the principal thrust of the defendant's argument went to the delay precipitated by the call for the canine.

While the reasons the officer gave, taken separately, may have been insufficient to support his reasonable suspicion, see, e.g., *Commonwealth* v. *Cardoso*, 46 Mass. App. Ct. 901, 901-902 (1998) (officer may not conduct patfrisk simply because nervous defendant was fidgeting and did not make eye contact), "[w]e view the facts and circumstances as a whole in assessing the reasonableness of the officer['s] conduct."[5] *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996). Given the occupants' past narcotics convictions, the strong odor of air freshener, and being in a leased vehicle registered in a State where neither occupant resided, Shugrue was entitled to expand the scope of his investigation. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991) ("a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief"); *Commonwealth* v. *Robie*, 51 Mass. App. Ct. 494, 497-498 (2001). Confronted with these facts, the officer could in accordance with proper police work[6] permissibly use whatever resources were available to him to confirm or dispel his suspicion that the occupants were involved in drug activity. See *Commonwealth* v. *Feyenord*, *supra* at 80. "An expeditious collateral inquiry which might result in the suspect['s] arrest or prompt release is not unreasonable when done to meet 'the practical demands of effective criminal investigation and law enforcement.' " *Ibid.*, quoting from *Commonwealth* v. *Barros*, 425 Mass. 572, 585 (1997). Furthermore, the duration of the stop was not prolonged or onerous. Shugrue promptly requested the canine, and the canine unit arrived less than thirty minutes after the initial stop. In total, the stop lasted about forty minutes. See *Commonwealth* v. *Feyenord, supra* at 81 & n.11; *Commonwealth* v. *Watts*, 74 Mass. App. Ct. at 519 n.5.

In addition, the officer properly could have ordered the defendant (and Degroat) to exit the vehicle based on their criminal

---

[5]We do not think that the large age gap between the occupants and the fact that they lived in two different boroughs within the same city, standing alone, would have provided sufficient basis to suspect criminal activity. Nor are tinted windows or air fresheners, each viewed independently, sufficient bases for reasonable suspicion.

[6]That is, the officer could use a step-by-step methodical investigative approach, not proceeding on a mere guess, hunch, or surmise.

histories.[7] See *Commonwealth* v. *Rivera*, 67 Mass. App. Ct. 362, 367 (2006) (police may take reasonable precautions for their own safety). We decline to address the Commonwealth's argument that a permissible basis for the exit order was to avoid an inadvertent dog bite — albeit from an especially well-trained dog. There was "no causal relationship between [the exit] order" and the discovery of the cocaine, *Commonwealth* v. *Lobo*, 82 Mass. App. Ct. 803, 809 (2012), as the drugs were in the back seat. In any event, once Dash indicated the presence of drugs, the troopers had probable cause to search the vehicle. See *Commonwealth* v. *Sinforoso*, 434 Mass. at 324.

*Judgment affirmed.*

---

[7]The propriety of the exit order was not raised or argued below.