NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-552                                            Appeals Court
15-P-553


COMMONWEALTH  vs.  ANDREW K. LOCKE (and a companion case[1]).


Nos. 15-P-552 & 15-P-553.

Worcester.      February 4, 2016. - June 7, 2016.

Present:  Cypher, Wolohojian, & Neyman, JJ.


Controlled Substances.  Practice, Criminal, Motion to suppress.
     Search and Seizure, Motor vehicle, Threshold police
     inquiry.  Constitutional Law, Search and seizure,
     Investigatory stop.  Threshold Police Inquiry.


Complaints received and sworn to in the Dudley Division of the District Court Department on December 19, 2011.

Pretrial motions to suppress evidence were heard by Gerald A. Lemire, J., and motions for reconsideration were considered by him.

An application for leave to prosecute an interlocutory appeal was allowed by Robert J. Cordy, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.


Ellyn H. Lazar-Moore, Assistant District Attorney, for the Commonwealth.
     Barry A. Bachrach for Andrew K. Locke.
     Sean J. Gallagher for Tanik S. Kerr.

---

[1] Commonwealth vs. Tanik S. Kerr.

CYPHER, J.  Complaints issued in the District Court charging the defendants, Andrew K. Locke and Tanik S. Kerr, with trafficking in fifty pounds or more of marijuana, G. L. c. 94C, § 32E(a), and conspiracy to traffic in marijuana, G. L. c. 94C, § 40.[2]  The Commonwealth appeals from the allowance of the defendants' motions to suppress evidence and from the denials of its motions for reconsideration, arguing that the judge committed legal error when he concluded that "the odor of marijuana does not constitute reasonable suspicion of criminal activity or probable cause to believe that more than one ounce of marijuana" was present in the defendants' vehicle.  We are constrained to affirm the orders of suppression.  See Commonwealth v. Cruz, 459 Mass. 459, 472 (2011) (Cruz); Commonwealth v. Overmyer, 469 Mass. 16, 17 (2014) (Overmyer); Commonwealth v. Craan, 469 Mass. 24 (2014) (Craan).

We summarize the facts found by the judge after an evidentiary hearing, at which State police Troopers Scott Driscoll and Christopher Coscia both testified, supplemented by uncontested facts in the record.  Craan, supra at 26.  On December 17, 2011, Trooper Driscoll saw a white minivan make an erratic lane change on Route 84 in Sturbridge, nearly causing a collision.  Trooper Driscoll continued to watch the minivan and

---

[2] The Commonwealth amended the trafficking charges to possession of marijuana with the intent to distribute.

clocked it in excess of the posted speed limits as it approached the tollbooths on Route 84.  After the minivan passed through the tollbooth, Trooper Driscoll stopped the minivan.  He did not see any furtive movements, no one attempted to flee, and he did not know how many people were in the minivan because the windows were tinted and had interior shades that were pulled down.

Trooper Driscoll approached the minivan on the passenger side.  He spoke through the open window and explained the reason for the stop.  He immediately detected the odor of unburned marijuana.[3]  Locke, who was in the driver's seat, appeared nervous, his chest was heaving, and he talked excessively.  The passenger, Kerr, sat quietly and stared straight ahead.  Trooper Driscoll asked Locke for his driver's license and registration. Locke produced an Arizona driver's license and a rental contract in the name of "Robert Spinks."  The rental contract indicated that the minivan had been rented two days earlier in Rhode

---

[3] At the hearing on the motion to suppress, Trooper Driscoll described the odor as a "very strong odor of fresh marijuana coming out of the vehicle."  In his findings, the judge did not refer to Trooper Driscoll's description of the odor as "very strong."  The decisional law of the Supreme Judicial Court makes clear that the description of the odor as "strong" or "very strong" does not, without more, constitute reasonable suspicion or probable cause to believe that more than one ounce of marijuana is present in light of the subjective and variable nature of the strength of smell.  See Overmyer, supra at 21-22 (strength of odor is subjective and dependent on many variables such as gender, age, ambient temperature, presence of other fragrant substances or masking agents, pungency of specific strain of marijuana, and environment where odor is detected).

Island.  Locke explained that Robert Spinks was his uncle and
that Locke was visiting Spinks in Connecticut and had borrowed
the minivan from him so that he could visit his daughter in the
Mattapan section of Boston.  Trooper Driscoll asked Locke if he
was an authorized driver on the rental agreement, but Locke did
not know.[4]

Trooper Driscoll noticed several air fresheners in the
minivan in various locations.  Trooper Driscoll knew from his
training and experience that air fresheners are often used to
mask the odor of narcotics in a vehicle.  Trooper Driscoll asked
Kerr his name; Kerr told him his name and said that he was also
from Arizona, but that he did not have a license or an
identification card with him.

---

[4] At the hearing on the motions to suppress, the
Commonwealth argued that Trooper Driscoll could have arrested
Locke for "use without authority" because he was not identified
on the rental contract as an authorized driver.  Because Kerr
did not have a license, the minivan would then have been towed
and an inventory search conducted, which would have resulted in
the discovery of the marijuana.  The Commonwealth did not pursue
this argument in its brief on appeal, and the facts necessary to
support this argument were not developed in the record.
Specifically, Locke did not know whether he was an authorized
driver (knowledge is an element of use without authority), there
was no testimony that the rental contract prohibited other
drivers, and the judge made no findings regarding this issue.
Contrast Commonwealth v. Henley, 63 Mass. App. Ct. 1, 5-6 (2005)
(name of driver of rental car not on contract and his temporary
license had expired); Commonwealth v. Watts, 74 Mass. App. Ct.
514, 518-519 (2009) (rental agreement had expired, vehicle had
been "queried" by police department within last thirty days, and
rental agency told officer that defendant was not authorized
operator and that they did not want him driving it).

Trooper Driscoll returned to his cruiser with the documents Locke had given him and called for backup. Trooper Scott Shea arrived several minutes later, and Driscoll instructed him to call for a drug-detection canine unit.

Trooper Driscoll went to the driver's side of the minivan and asked Locke to step out of the vehicle and pat frisked him for the trooper's own safety. He did not find anything. Trooper Driscoll explained to Locke that he was concerned because Locke was driving a rental vehicle but his name was not on the rental contract as an authorized driver and that there was an odor of marijuana. Trooper Driscoll explained the law regarding possession of marijuana and asked him if he was in possession of any marijuana or if he had smoked marijuana earlier that day in the minivan. Locke stated that he was not in possession of marijuana but that he and Kerr had smoked some earlier in the day. Trooper Driscoll told him that he had a canine unit several minutes away and that he was going to have the dog sniff the minivan. Trooper Driscoll had Locke sit in the back of his cruiser for the sake of the troopers' safety. He was not handcuffed.

Troopers Driscoll and Shea then approached the passenger side of the minivan and asked Kerr to step out. Trooper Driscoll pat frisked Kerr and felt a semisolid bulge or bundle in his jacket. He asked Kerr what it was, and Kerr said it was

cash.  At Trooper Driscoll's request, he showed Driscoll the cash and said that it was about $3,500 that his sister had given him for Christmas shopping.  Trooper Driscoll asked Kerr about the odor of marijuana, and Kerr denied that there was an odor of marijuana coming from the minivan.  He also denied that he had smoked marijuana earlier with Locke.  Trooper Driscoll asked Kerr to sit on the guardrail, but he requested to wait in the rear of Shea's cruiser.

After several more minutes, Trooper Coscia from the canine unit arrived.  The dog made a positive hit for narcotics near the rear lift gate of the minivan.  When Trooper Coscia opened the door to the minivan, he noticed that it was "quite stinky, the smell of a lot of marijuana."  The troopers conducted a search of the vehicle and discovered seven fresh bundles of marijuana, well over an ounce, in the rear cargo area, located under a tarp or floor mat.  After advising them of the Miranda rights, the troopers arrested Locke and Kerr.  Kerr volunteered that he should not be arrested because he was just a passenger. Trooper Driscoll replied that there was no possible way he could not have noticed 159 pounds of marijuana in the back of the minivan.[5]

---

[5] The bales of marijuana had numbers on them, which appeared to indicate weight.  Trooper Driscoll added the numbers and determined that there were 159 pounds.  This weight was later confirmed.

There was too much marijuana to fit into the cruisers, so Trooper Driscoll called for a tow truck to take the minivan with the marijuana to the State police barracks to inventory the contents pursuant to the State police written inventory policy.[6]

The Commonwealth argues that the judge erred when he concluded that the search of the defendant's vehicle was not supported by reasonable suspicion or probable cause. The Commonwealth contends that, although the judge correctly characterized the Supreme Judicial Court's holding regarding the conclusions that may be drawn from the odor of marijuana, in this case there was more than the mere odor of marijuana.

We review to determine whether the judge correctly applied the constitutional principles to the facts as found.[7] Commonwealth v. Lawson, 79 Mass. App. Ct. 322, 323 (2011). Possession of one ounce or less of marijuana is a civil, but not a criminal, violation. Cruz, supra at 464. Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 705 (2014). See G. L. c. 94C, §§ 32L-32N. The odor of burned or unburned marijuana, without more, will not justify the warrantless search of a vehicle.

---

[6] As a result of the inventory search, the troopers also found seven cellular telephones and a backpack with a Georgia driver's license in the name of Andrew Locke.

[7] Although some of these subsidiary facts relied on by the Commonwealth are not in the judge's findings, they are in Trooper Driscoll's and Trooper Coscia's uncontroverted testimony. The defendant does not challenge the use of these facts by the Commonwealth.

Overmyer, supra at 17.  See Craan, supra at 27-30 (improper search of automobile where search was based on odor of marijuana alone, defendant exhibited no signs of impairment, and, although summonses issued for criminal offenses, defendant was permitted to drive away without being asked to submit to any field sobriety tests).

We begin by considering the validity of the traffic stop and the incremental progression of the police activity.  There is no question that the initial stop of the minivan was proper.  Commonwealth v. Torres, 433 Mass. 669, 673 (2001) (where police have observed traffic violation, they are warranted in stopping vehicle).  Detaining a vehicle for a motor vehicle infraction, however, must "last no longer than reasonably necessary to effectuate the purpose of the stop."  Commonwealth v. Garden, 451 Mass. 43, 46 (2008), quoting from Commonwealth v. Ciaramitaro, 51 Mass. App. Ct. 638, 643 (2001).  See Commonwealth v. King, 389 Mass. 233, 244 (1983) (once officers approached car, they were required to complete parking citation process and, barring other reasons to detain occupants, leave them free from further police restraint).

Although the initial stop was valid, the exit orders were not.  As the judge noted, Trooper Driscoll did not observe any furtive movements, weapons, contraband, or other activity to suggest that there was criminal activity or danger to the

officers or others.  Upon review, we ask whether a reasonably prudent person in the police officer's position would be warranted in the belief that the safety of the police or that of other persons was in danger.  Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999).  To support an order to exit a vehicle, the officer need not point to specific facts that the occupants are armed and dangerous; rather, the officer need only point to some fact or facts in the totality of the circumstances that would create a "reasonable suspicion of danger" that would warrant an objectively reasonable officer to secure the scene in a more effective manner by ordering the occupants out of the vehicle.  Commonwealth v. Feyenord, 445 Mass. 72, 75-76 (2005), cert. denied, 546 U.S. 1187 (2006).  See Commonwealth v. Cardoso, 46 Mass. App. Ct. 901, 902 (1998) (fidgeting around and avoiding eye contact were not enough to order operator out of car).

Here, there is no indication in the record that Locke's driver's license was invalid.  There is also nothing in the record to support the conclusion that the fact that the minivan was a rental vehicle but that Locke's name was not on the contract would, or could, without more, result in Locke's arrest.  See note 4, supra.  The fact that Locke appeared to be nervous was insufficient to justify an exit order, as was Kerr's silent staring straight ahead.  See Cruz, supra at 468

(nervousness is common during mundane encounters with police and is "not necessarily indicative of criminality"); Commonwealth v. Douglas, 472 Mass. 439, 445 (2015) (staring straight ahead did not give rise to reasonable suspicion). Once Locke produced his license, the vehicle registration, and the rental agreement, the defendants should have been permitted to leave after Trooper Driscoll issued a citation for speeding or another traffic infraction unless Locke and Kerr were to be detained for unauthorized use, which did not occur. See note 4, supra.

Although several considerations in combination may support a reasonable belief that there is criminal activity, the odor of marijuana, the presence of air fresheners, and the nervousness of the defendants do not, in these circumstances, warrant a reasonable suspicion of criminal conduct alone or together. See Cruz, supra at 468-469, 474-476 (exit order not supported by reasonable suspicion where driver of illegally parked vehicle was smoking small, inexpensive cigar commonly known to mask odor of marijuana smoke, officer detected faint odor of marijuana, and driver and front seat passenger appeared to be nervous). As the facts and circumstances here did not justify exit orders, they also did not justify the patfrisks. Trooper Driscoll did not issue the exit orders or conduct the patfrisks until Trooper Shea had arrived. Upon Trooper Shea's arrival, the defendants

did not exhibit any new behavior that would have justified the patfrisks.[8]

The Commonwealth attempts to justify the exit orders, patfrisks, prolonged detention, and search of the minivan as an automobile search based on probable cause. The Commonwealth argues that the nervous conduct of Locke, the questionable rental agreement, and the very strong odor of marijuana -- so strong that three air fresheners and an aerosol spray did not cover the odor -- combine to establish probable cause. However, the Supreme Judicial Court specifically noted in Overmyer that, "[a]lthough the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, . . . it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, that is, more than one ounce, as would be necessary to constitute probable cause."[9] Id. at 21. The Supreme Judicial Court further noted

---

[8] We pause to note that there is nothing at all in the record to indicate that the State police were not proceeding in good faith; until recently Trooper Driscoll's observations would have supported a search under the automobile exception based on probable cause that the automobile contained contraband. Cruz, supra at 478 (Cowin, J., dissenting). Overmyer, supra at 19. Craan, supra at 28. See Commonwealth v. Rodriguez, 472 Mass. 767, 774 (2015).

[9] The Supreme Judicial Court's decisions rest on the idea that one cannot reliably determine weight from smell alone. It is undeniably true that precise quantity cannot ordinarily be determined by one's nose. But that is not the same as concluding that relative quantity cannot be determined through

that even though "[t]he officers in this case detected what they described as a 'strong' or 'very strong' smell of unburnt marijuana. . . . , such characterizations of odors as strong or weak are inherently subjective; what one person believes to be a powerful scent may fail to register as potently for another."[10]

smell, at least to the level of reasonable suspicion or probable cause.  Indeed, our sense of smell permits us to determine relative quantity as a matter of routine and with reliability: we may not know the precise number of loaves being baked at the bakery, but we know from smell alone that it is more than one; a burning house does not cause us to exclaim, "I smell a match." Thus, although a police officer without specialized training may not be able to determine from smell alone the precise weight of marijuana, it is certainly within his or her powers of discernment to be able to conclude that the smell of 2,544 ounces of it, as were present here, indicates that more than one ounce is probably present.  This is because the question is properly one of the relative strength of a smell rather than precise weight.

This approach has, in our view, driven our jurisprudence away from the intent of the 2008 ballot initiative.  It is difficult to imagine that, when the voters of this Commonwealth chose to decriminalize the possession of less than one ounce of marijuana, they also intended to limit law enforcement's ability to investigate and curtail the interstate transport of 2,544 times that amount.  After all, the 2008 initiative left intact the overarching proposition that "possession of marijuana, in any amount, remains illegal" and "any amount of marijuana is considered contraband."  Cruz, supra at 473.  Here, the smell of marijuana was "very strong" and that should have been enough to support a reasonable suspicion, or probable cause, that a criminal amount of marijuana was present.

[10] In Overmyer, the Supreme Judicial Court recognized that "[a]lthough it is possible that training may overcome the deficiencies inherent in smell as a gauge of the weight of marijuana present, . . . there is no evidence that the officers here had undergone specialized training that, if effective, would allow them reliably to discern, by odor, not only the presence and identity of a controlled substance, but also its

Ibid.  See Commonwealth v. Rodriguez, 472 Mass. 767, 774 (2015) ("we no longer consider the 'strong' or 'very strong' smell of unburnt marijuana to provide probable cause to believe that a criminal amount of the drug is present").  The dog's detection of narcotics is not helpful to the Commonwealth's argument because there was no evidence to indicate that the trained dog is able to discern whether the marijuana he detected weighed over one ounce.  See Craan, supra at 28 (odor of marijuana cannot provide probable cause to search vehicle).

As discussed above, Trooper Driscoll's observations were not sufficient to support an exit order or a patfrisk of the minivan's occupants.  The standard, a reasonable belief that the

---

weight."  Id. at 22.  The court concluded that, "[i]n sum, we are not confident, at least on this record, that a human nose can discern reliably the presence of a criminal amount of marijuana, as distinct from an amount subject only to a civil fine.  In the absence of reliability, 'a neutral magistrate would not issue a search warrant, and therefore a warrantless search is not justified based solely on the smell of marijuana,' whether burnt or unburnt."  Id. at 23.  Trooper Driscoll testified that he had been trained to recognize the odors of both burnt and unburnt marijuana.  Trooper Driscoll noticed that there were three air fresheners in the car:  one hanging from the rearview mirror, a second one on the floor in front of the center console, and a third on the floor behind the driver's seat.  In addition, there was an aerosol can of air freshening spray on the back seat.  Trooper Driscoll was aware, based upon his training and experience, that people often use air fresheners to mask the odor of narcotics in a vehicle.  The air fresheners did not, however, cover the "very strong odor of fresh marijuana."  Trooper Driscoll was also trained to recognize signs of drug distribution such as packaging materials, cellular telephones, ledger notes, and the amount of narcotics involved.

officer's or another's safety is in jeopardy, is not a high standard, but the Supreme Judicial Court has made it clear that nervousness alone is insufficient to support an exit order. The odor of marijuana, burned or unburned, perceived as strong or faint, is insufficient for a search of a vehicle. Two observations, insufficient alone, do not, in these circumstances,[11] add up to probable cause to search the minivan under the automobile exception. The additional fact that the rental agreement was not in the name of the driver adds nothing to the equation.

Although the initial stop was valid and the officer detected what appeared, subjectively to him, to be a "very strong" odor of unburned marijuana, the exit orders, patfrisks, and search of the minivan were not valid under recent Supreme Judicial Court precedent, discussed supra. Accordingly, we must affirm the orders allowing the motions to suppress.

So ordered.

---

[11] The Supreme Judicial Court has carved out an exception to the general rule that although something may, in fact, be perfectly innocent or legal it may, depending on the circumstances, still establish reasonable suspicion or probable cause to believe that a crime has been, will be, or is being committed. See Cruz, supra at 478 (Cowin, J., dissenting) (noting that "seemingly innocent activities taken together can give rise to reasonable suspicion," quoting from Commonwealth v. Grandison, 433 Mass. 135, 139 [2001]). See also Terry v. Ohio, 392 U.S. 1, 22 (1967) (series of innocent acts, "taken together warranted further investigation").