SUPERIOR COURT 
 
 COMMONWEALTH vs. CHRIST DAPHNIS, JARRID CAMPBELL, and RONALD HOPKINS

 
 Docket:
 2184CR00160 / 2184CR00161 / 2184CR00162
 
 
 Dates:
 January 8, 2024
 
 
 Present:
 Sarah Weyland Ellis
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 FINDINGS OF FACT, RULINGS OF LAW, AND ORDER ON DEFENDANTS’ MOTION FOR DISCOVERY AND MOTION TO SUPPRESS SNAPCHAT EVIDENCE
 
 

             The parties are before the court on Defendants’ Motions to Suppress video and photographic evidence seized from their Snapchat accounts by the Randolph Police Department and shared with the Boston Police Department. Defendants also object to the Court’s ruling limiting the scope of cross-examination of Randolph Police Detective Sergeant Richard Brewer, who maintained the Randolph Police Department’s undercover Snapchat account, and Defendants renew their requests for discovery pertaining to the account.     
            An evidentiary hearing was held on October 23, 2023, at which Detective Sergeant Brewer testified under oath and was subject to cross examination, and eight exhibits were entered into evidence. A further hearing on Defendants’ motions was held on December 19, 2023. Upon consideration of the pleadings, the arguments, the credible evidence, and the appropriate legal standards as discussed herein, Defendants’ objections to the scope on cross- examination are OVERRULED, Defendants’ renewed requests for discovery pertaining to the undercover Snapchat account are DENIED, and Defendants’ Motions to Suppress are also
                                                                        -1-
DENIED.
FINDINGS OF FACT
            Upon consideration of the credible evidence, I find the following facts:
I. DETECTIVE SERGEANT BREWER
            Detective Sergeant Brewer has been employed as a police officer with the Randolph Police Department (RMD) since 2012 and has held a variety of police positions. He is currently the supervisor of the RMD’s Drug Control Unit. From approximately January 2015 to June 2015, Detective Sergeant Brewer was the school resource officer for the Randolph Middle School. In this capacity, he interacted with Defendants Jarrid Campbell and Christ Daphnis, who were then students at the middle school. Detective Sergeant Brewer also knew Defendant Ronald Hopkins to be a member Mr. Campbell’s and Mr. Daphnis’s friend group.    
            Detective Sergeant Brewer, through his training and experience in the Drug Control Unit, became aware that social media is a popular tool within the illegal drug trade to advertise drugs for sale. Individuals trafficking in illicit drugs use social media platforms, including Snapchat, to advertise drug pricing, daily menus of available drugs or strands of marijuana, and quantities of drugs available for sale. Detective Sergeant Brewer also became aware that social media platforms, including Snapchat, are used by groups engaged in criminal activity to engage with both members of their own groups as well as opposing groups. Detective Sergeant Brewer has seen such individuals use social media to incite violence through hostile communications.
II. SNAPCHAT
      Sergeant Detective Brewer testified to the operation of the social media platform Snapchat consistent with the findings set forth in Commonwealth v. Carrasquillo, 489 Mass. 107, 108-109 (2022).
                                                                        -2-
            Snapchat is a social media platform that allows users to share photographs and video recordings with accompanying text, collectively known as “snaps,” as well as communicate by direct text message and video calling. Accord id. A user may share snaps with other users either as “direct snaps” or as posts to the user’s “story.” Accord id. at 109. Direct snaps are sent directly from one user to another user’s inbox, remain visible for ten seconds or less after they are opened, and can be viewed only once. Accord id. Posts to a user’s story, by default, are shared with a larger audience and remain visible for up to 24 hours, during which time they can be repeatedly and continuously replayed by viewers. Accord id. A recipient or viewer can preserve a direct snap or story post either by taking a screenshot or recording the content by some other technology external to Snapchat. Accord id. If a snap is preserved by screenshot, the user who posted the snap is notified of the screenshot.     
            Snapchat accounts have privacy settings. If a user’s account is set to “private”, the default setting, then only “friends” of the user may view the user’s story posts. To become a Snapchat “friend” the account must either receive and accept an invitation from another user or request to follow another user and receive that account’s approval. Conversely, a user may set his/her Snapchat account to “public,” which permits any other Snapchat account to see the user’s story posts. Accord id., citing Ceres, How to Use Snapchat: Critical Tips for New Users, Wired, Oct. 2, 2018, https:// www.wired.com/story/how-to-use-snapchat-filters-stories-stickers [https://perma.cc/NW6F-NKK3].     
            Snapchat encourages users to expand their network of friends through a software algorithm that suggests friendships between users. The “Quick Add” feature allows a user to send a friend request to an account suggested by the algorithm. Snapchat also has a “shoutout” function that permits a user to send a friend request to someone “tagged” – identified in a post –
                                                                        -3-
by another user. In addition to shoutouts and Quick Adds, a friend request may be made by searching for someone on Snapchat and sending them a friend request, or physically typing in a known Snapchat username and sending a friend request.     
            Once a friend request is sent using the means above, the recipient user is notified of the request. Unless and until the recipient accepts the request, the recipient’s Snapchat posts / stories are not visible to the person requesting access. However, once a user accepts a friend request, that friend may view the user’s Snapchat story, including any photographs or videos posted on that story.   
            Snapchat has a feature called a Snap Score. The Snap Score increases in numerical value as the user is more active on Snapchat, including posting to their story and adding friends. A high Snap Score number indicates active use on Snapchat. While users cannot see the Snap Score of someone making a friend request prior to acceptance of that request, the Snap Score may dispel suspicion that the account is robotic or otherwise not legitimate. The higher the Snap Score, the more likely the Snapchat algorithm will circulate the user for additional Quick Adds.
III. RMD’S UNDERCOVER SNAPCHAT ACCOUNT
            Detective Sergeant Brewer maintains an undercover Snapchat account as an investigative tool which he utilizes via a department-issued iPhone. He created the account, and he is the only officer with access to it. As the account is “undercover”, it does not identify that it is owned, operated, or affiliated with law enforcement. Detective Sergeant Brewer created a “generic” avatar, i.e., a cartoon image known as a “Bitmoji”, affiliated with the undercover account. This avatar was not based on the identity of any actual person and does not imitate any actual person.[1]
--------------------------------------------
[1] I denied Defendants’ requests to cross-examine Detective Sergeant Brewer, or otherwise seek discovery, on the name, race, gender, human, or non-human appearance of the avatar and other identifying information associated with the undercover account.
                                                                        -4-
Detective Sergeant Brewer has built the undercover account over a period of years. To eliminate suspicion of the account, and to encourage opportunities for the account to appear in the Quick Add feature to other Snapchat users, he has achieved a Snap Score that reflects active use. Via the undercover account, Detective Sergeant Brewer has requested to follow the accounts of specific individuals suspected of engaging in criminal activity, often related to drug and violent crimes. Detective Sergeant Brewer has also requested and accepted requests from accounts within the “friend” groups of those suspected of criminal activity, as well as from random accounts with no known affiliation to criminal activity to build the undercover account’s Snap Score and credibility.     
            Detective Sergeant Brewer monitors the undercover account with varying degrees of frequency, both on- and off-duty, for information relevant to criminal investigations or criminal activity, and indications of dangers to public or individual safety. When he views a photograph, video recording, or other post that appears to be criminal in nature, relevant to an investigation, or of potential evidentiary value, he records it. To avoid the Snapchat feature that notifies a user if another account has taken a screenshot of the post – which could arouse suspicion of the undercover account – Detective Sergeant Brewer uses a second RMD-issued device, an iPad, to record what is appearing on the department-issued iPhone.     
            Once he records the Snapchat photograph or video on the iPad, he then texts the recording from the iPad back to the iPhone using What’s App, an encrypted texting application, which provides a time and date stamp for approximately when he recorded the Snapchat story. Detective Sergeant Brewer then saves the photograph or video to a file on his RMD secure computer, organized by the identity of the Snapchat user when known. Thus, Detective Sergeant Brewer maintains an on-going dossier of intelligence on Snapchat users within his network. He
                                                                        -5-
only gathers these photographs and videos while he is monitoring the accounts. If he fails to observe a user’s post within 24 hours, the item is automatically deleted, and it is not viewed or preserved by the police in any way.     
            The RMD does not have a policy, written or otherwise, specific to police surveillance of Snapchat accounts. A superior officer does not oversee Detective Sergeant Brewer’s use of the undercover account or of the material he routinely recovers from the undercover account’s Snapchat friend group. Detective Sergeant Brewer is the only officer with access to the Snapchat account and to the files saved on his department-issued computer. The computer is password protected, and he deems the Snapchat files to be confidential in nature.  He has never shared them with any entity outside of law enforcement. Detective Sergeant Brewer’s undercover account remains active.
IV. DEFENDANTS’ SNAPCHAT ACCOUNTS
            Detective Sergeant Brewer’s undercover Snapchat account was friends with Snapchat accounts associated with each of the three Defendants while Defendants were juveniles. The Snapchat account associated with Mr. Campbell is j_campbell02. The account associated with Mr. Hopkins is Hopkins.ronald. The account associated with Mr. Daphnis is cdaphnis8. Detective Sergeant Brewer believes these accounts are held by the respective Defendants because he is familiar with Defendants, and the photographic and video activity on each of the accounts is consistent with their respective images / appearances.     
            All three of Defendants’ accounts were private. Each either accepted a friend request from the undercover account or initiated a friend request to the undercover account which Detective Sergeant Brewer accepted. However, as to each of Defendants, Detective Sergeant Brewer could not recall whether he or the respective contact initiated the friend request.
                                                                        -6-
Additionally, he could not testify to, and there is no record evidence of when the undercover account “friended” any of Defendants’ accounts or whether the respective Defendants were suspected of any specific criminal activity at the time.     
            Detective Sergeant Brewer ultimately recorded photographs and videos from the three accounts associated with Defendants while they were between 16 and 18 years old, as follows:
1) Daphnis (DOB: 3/22/2002) between December 23, 2019 and January 19, 2021;
2) Hopkins (DOB: 9/12/2002) between March 8, 2019 and April 1, 2021; and
3) Campbell (DOB: 12/23/2002) between January 7, 2019 and April 1, 2021.
See Exhibit 1. These included an image of Mr. Campbell holding what appears to be a firearm, an image that appears to be Mr. Hopkins with his face blurred holding what appears to be a firearm, and an image of Mr. Daphnis pointing what appears to be a firearm at the camera. Other photographs and video recovered from the accounts include images of what appear to be firearms on a couch and on someone’s lap. Other images and communications captured include advertisements for marijuana sales.
V. COMMUNICATIONS BETWEEN RANDOLPH AND BOSTON POLICE DEPARTMENTS
            In the fall of 2020, the Boston Police Department (BPD) contacted the RMD, identified Defendants as persons of interest in a fatal shooting, and asked whether the RMD had any intelligence on them. Defendants were still juveniles at the time. In response to this inquiry, Detective Sergeant Brewer provided the BPD with the photographs and videos he recorded from Defendant Snapchat accounts. Exhibit 1.
RULINGS OF LAW
I. FOURTH AMENDMENT AND ART. 14
            To be entitled to the protections against government searches under the Fourth Amendment of the U.S. Constitution or art. 14 of the Massachusetts Declaration of Rights, an
                                                                        -7-
individual must demonstrate that the challenged government conduct amounted to a search in the constitutional sense. Carrasquillo, 489 Mass. at 117, citing Commonwealth v. Porter P., 456 Mass. 254, 259 (2010). “[T]he government performs [such] a search when it intrudes on a ‘subjective expectation of privacy … that society is prepared to recognize as reasonable.” Carrasquillo, 489 Mass. at 117, quoting Commonwealth v. Garcia, 486 Mass. 341, 350 (2020). Thus, “a defendant must prove both a subjective and an objective expectation of privacy.” Carrasquillo, 489 Mass. at 117, citing Commonwealth v. Delgado-Rivera, 487 Mass. 551, 556 (2021).
            A. Subjective Expectation of Privacy
            “To have a subjective expectation of privacy, one must perceive or otherwise genuinely believe that the object of the alleged search is private.” Carrasquillo, 489 Mass. at 117-118, citing Commonwealth v. Johnson, 481 Mass. 710, 721 (2019). See Commonwealth v. Molina, 459 Mass. 819, 830 (2011) (Botsford, J., dissenting) (“An expectation of privacy signifies a person’s anticipation, belief, or understanding that he may preserve a particular place as private”), citing Katz v. United States, 389 U.S. 347, 351 (1967). The inquiry, therefore, turns in part on what an individual knows, that is, whether the individual was subjectively aware of the presence or absence of protections in place to preserve his or her privacy. Carrasquillo, 489 Mass. at 118 (citing cases).     
            The Commonwealth argues that Mr. Daphnis’s Motion to Suppress should be denied for failure to comply with Mass. R. Crim P. 13(a)(2), which requires “an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge … .” Mr. Daphnis merely provided an affidavit signed by his defense counsel. The affidavit requirement under Rule 13(a)(2) is not an empty formality, Commonwealth v. Clegg, 61 Mass. App. Ct. 197,
                                                                        -8-
204 (2004), but neither is it an absolute rule. Commonwealth v. Santosuosso, 23 Mass. App. Ct. 310, 312 (1986).[2] Because Mr. Daphnis’s Motion otherwise fails, I need not decide whether a defendant may satisfy the spirit of Rule 13(a)(2) through other means – for instance, relying on the affidavit of a co-defendant presented in support of a collateral motion.     
            Considering the testimony and other evidence presented, the facts do not establish that any of Defendants had a subjective expectation of privacy in their respective Snapchat accounts. As the SJC held in Carrasquillo, the mere fact that an account was set to the default setting of “private” does not establish a subjective expectation of privacy, particularly where there is no evidence that the account holder was aware of the setting. 489 Mass. at 119-120. There is no evidence that Defendants actually “engaged in conduct aimed at ensuring privacy” and thus they have not met their burden. Id. at 120 (citations omitted).[3]     
            The fact that Defendants may not have known that they had “friended” and sent content to a police officer does not establish a subjective expectation of privacy. Lewis, 2022 WL 1207748 at *1. There is no indication that Defendants limited their Snapchat friendships or dissemination of posts to known individuals or a specific, select group. Sergeant Detective Brewer’s uncontradicted testimony that his account was not based on any real person, much less
--------------------------------------------
[2] “The purpose of the affidavit requirement of Mass. R. Crim. P. 13 is: (1) to give the judge considering the motion a statement of anticipated evidence, in reliable form, to meet the defendant's initial burden of establishing the facts necessary to support his motion, … and (2) to provide the Commonwealth with fair notice of the specific facts relied on in support of the motion set forth in a form, i.e., under oath, which is not readily subject to change by the affiant (internal citation omitted).” Santosuosso, 23 Mass. App. Ct. at 313.
[3] Defense counsel correctly argues that the affidavits of Defendants Campbell and Hopkins were not entered into evidence and thus, “may not be considered … for purposes of deciding the motion to suppress.” Commonwealth v. Nunes-Daviega, No. 18-P-424, 2019 WL 80801 at *1 (Mass. App. Ct. Jan. 3, 2019), quoting Commonwealth v. Lawson, 79 Mass. App. Ct. 322, 326 n.4 (2011), overruled on other grounds by Commonwealth v. Campbell, 475 Mass. 611, 617 n.9 (2016). However, Defendants did not introduce any other evidence of their subjective expectations at the hearing. The absence of such evidence is fatal to Defendants’ motions. Commonwealth v. Lewis, 19-P-1837, 2022 WL 1207748 at *1 (Mass. App. Ct. Apr. 25, 2022) (Rule 23.0), citing Carrasquillo, 489 Mass. at 119-120. See Nunes-Daviega, 2019 WL 80801 at *1 (reversing allowance of motion to suppress where defendant failed to present evidence beyond affidavit that statements were involuntary); Lawson, 79 Mass. App. Ct. at 326 n.4 (affidavit may establish his entitlement to a hearing, but it does not constitute evidence of a privacy interest).
                                                                        -9-
anyone Defendants may have known, forecloses any such presumption. See Carrasquillo, 489 Mass. at 120 n.14 (“[T]he defendant did not follow his asserted policy of only accepting friend requests from people that he already knew[,]” “if indeed [defendant] had such a policy[.]”). The only plausible explanation in the record for Sergeant Detective Brewer’s ability to view Defendants’ posts was that Defendants requested and/or accepted friend requests from the undercover account and disseminated information to an unknown individual, the undercover account.[4]
            B. Objective Reasonableness of Any Expectation of Privacy
            Even if Defendants had met the subjective criteria, they have failed to establish any objectively reasonable expectation of privacy in the Snapchat posts at issue.    
            “What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.” Delgado-Rivera, 487 Mass. at 560, quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985). “Relevant factors in this determination include, inter alia, the precautions the individual took to protect his or her privacy; the character of the item searched; and the nature of the government intrusion.” Carrasquillo, 489 Mass. at 120, citing Delgado-Rivera, supra; Commonwealth v. Krisco Corp., 421 Mass. 37, 42 (1995). The courts consider “any protective measures an individual instituted to ensure that the object of the search remained within the individual’s control, such that he or she could limit its exposure to others”, “whether the person conducting the surveillance was entitled to be where he or she was,” and “whether the government obtained express or implied 
--------------------------------------------
[4] Defendants’ arguments that the race and/or gender of the Randolph Police Snapchat account avatar / Bitmoji are relevant to their subjective expectations of privacy are unavailing. Defendants failed to offer any evidence or plausible argument as to how an avatar’s depicted race or gender would have caused them to anticipate, believe, or understand that information they shared with an unknown individual would be private. See, supra, Molina, 459 Mass. at 830. Defendants have argued additional discovery is necessary regarding identifying characteristics of the undercover avatar, which leads to an inference that Defendants friended numerous unknown individuals. There is no direct evidence before the court as to the composition of Defendants’ Snapchat friend groups.
                                                                        -10-
authorization to be there[.]” Carrasquillo, 489 Mass. at 120-121 (internal citations and quotations omitted). Accord Lewis, 2022 WL 1207748 at *2.     
            Here, as in Carrasquillo and Lewis, Defendants accounts were private and their content “could be viewed only by those whom [they] became ‘friends’ with on the app.” Lewis, 2022 WL 1207748 at *2, citing Carrasquillo, 489 Mass. at 124. Nonetheless, they either friended or accepted a friend request from the undercover account and thereby “granted an unknown user access to [their] content[.]” Lewis, 2022 WL 1207748 at *2, citing Carrasquillo, 489 Mass. at 124. Detective Sergeant Brewer gained access to Defendants’ accounts not “by masquerading as a close friend or family member,” but because Defendants authorized an account they did not know to view their content. Lewis, 2022 WL 1207748 at *2, quoting Carrasquillo, 489 Mass. at 125 n.20, 126.[5] A defendant does not have an objectively reasonable expectation of privacy where, as here, “despite his asserted policy of restricting such access, he did not adequately ‘control[ ] access’ to his Snapchat account.” Carrasquillo, 489 Mass. at 124, citing Krisco Corp., 421 Mass. at 42.     
            The fact that the undercover account, by definition, did not identify its affiliation with law enforcement does not invalidate the access Defendants granted to their accounts. Police officers are not required “to identify themselves as such when they investigate criminal activity”; such a holding would “render[ ] virtually all undercover work unconstitutional.” Carrasquillo, 489 Mass. at 126-127. “[T]here is no constitutional remedy for ‘a wrongdoer’s [mistaken] belief
--------------------------------------------
[5] Contrary to Defendants’ claims, the fact that undercover account may have also “friended” other Snapchat accounts who were “friends” with Defendants’ accounts does not change the outcome or entitle Defendants to discovery or cross-examination on the identifying information for the account. That the undercover account possibly appeared to Defendants as a “friend of a friend” does not constitute “masquerading as a close friend or family member (emphasis added).” Lewis, 2022 WL 1207748 at *2, quoting Carrasquillo, 489 Mass. at 125 n.20. Defendants did not have an objectively reasonable expectation of privacy in posts they disseminated to an account for an individual they did not know, regardless of that account’s name, race, gender, or connection to other accounts known to Defendants.
                                                                        -11-
that a person to whom he voluntarily confides his wrongdoing’ is not a government agent.” Id.
at 125, quoting Hoffa v. United States, 385 U.S. 293, 302 (1966).
            Further, there is no evidence that Defendants’ status as minors compromised their ability to understand Snapchat’s features or accept friendship with the undercover account. Their voluntary decisions to share incriminating content with the undercover account stand in stark contrast to the inherent pressures and coercive nature of custodial police interrogations, where courts have held that minor status warrants special consideration. Cf. J.B.D. v. North Carolina, 564 U.S. 261, 269 (2011); Commonwealth v. Lopez, 485 Mass. 471, 480-481 (2020). Defendants, even as minors, did not have an objectively reasonable expectation of privacy in content transmitted to an unknown individual(s).     
            Finally, Defendants maintain that the RMD’s surveillance of their Snapchat posts is analogous to pole camera surveillance, the collection of cell site location information, or global positioning system monitoring and thus should be analyzed under the “mosaic theory.” The SJC rejected Defendants’ same argument in Carrasquillo, reasoning that:
[T]he asserted government intrusion took place with the defendant’s permission. This stands in contrast to our conclusion that “pinging” a cell phone violated a reasonable expectation of privacy in part because pings are initiated and effectively controlled by the police ... without any express or implied authorization or other involvement by the individual cell phone user.
489 Mass. at 125-126 (internal quotations and citations omitted).
            The social media content that Defendants elected to share with unknown individuals via Snapchat is simply not analogous to inexorably subjecting “the sum of one’s public movements” to surveillance, Commonwealth v. McCarthy, 484 Mass. 493, 503-504 (2020), quoting United States v. Jones, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring), merely by leaving one’s home or owning a cell phone. Commonwealth v. Mora, 485 Mass. 360, 373 (2020) (continuous
                                                                        -12-
monitoring of defendant’s home was “so targeted and extensive that the data it generated, in the aggregate, exposed otherwise unknowable details of a person’s life.”); Commonwealth v. Augustine, 467 Mass. 230, 245-246 (2014) (“[C]ellular telephones are increasingly viewed as necessary … physically accompany their users everywhere—almost permanent attachments to their bodies … [and] are constantly [generating] CSLI[.]”).     
            As Defendants have failed to demonstrate subjective and objective expectations of privacy in the objects searched necessary to establish an unlawful search under the Fourth Amendment and art. 14, their Motions to Suppress are DENIED on this ground.
II. EQUAL PROTECTION
            In their Motions to Suppress and renewed requests for discovery into the undercover account, Defendants allege that RMD used the account to target the social media accounts of African Americans in violation of Defendants’ equal protection rights. This Court (Ullman, J.) previously denied Defendants’ motions for such discovery finding that “Defendants ha[d] not made even a threshold showing based on limited enforcement and benchmark statistical evidence, which was the predicate for the discovery orders requiring BPD to produce evidence of its Snapchat use in Commonwealth v. Dilworth, 35 Mass. L. Rept. 365, 2019 WL 469356 (Jan. 18, 2019), and other cases.” (Dec. and Order Defs.’ Mot. Production Randolph Police Social Media Activity, No. 2184CR00160, Dkt. No. 25).     
            Defendants have not presented any new evidence warranting reconsideration of the Court’s prior Decision and Order.[6] Detective Sergeant Brewer testified consistently with his
--------------------------------------------
[6] Defendants again rely on a list generated by Detective Sergeant Brewer which identified eight friends / associates, including the three Defendants, whose Snapchat accounts Detective Sergeant Brewer monitored through the undercover account. Defendants maintain that all members of the group are African American / Black. However, Defendants have not presented any evidence to refute Sargent Detective Brewer’s stated nondiscriminatory basis for monitoring the eight accounts or to indicate that he selected these accounts because of the race of the accountholders.  The sole fact that eight friends / associates may be members of the same race does not constitute
                                                                        -13-
previous “detailed affidavit describing the department’s use of Snapchat and stating under oath … that the targets of the RMD’s social media investigations are almost always based upon the target’s connection to criminal activity.” Id. at 6. (internal quotations omitted). Specifically, although Detective Sergeant Brewer could not recall exactly how he “friended” Defendants’ accounts, he testified that the accounts he surveilled were either targets of investigation based on evidence of connection with criminal activity; friends/associates of those targets; friendship suggestions generated automatically by the Snapchat software; and/or sent friend requests to the undercover account. For the reasons set forth in the Court’s prior Decision and Order (id.), Defendants have failed to present sufficient evidence of an equal protection violation or a right to discovery regarding the broader use or identifying information for the RMD undercover account. See Commonwealth v. Cuffee, 492 Mass. 25, 31-32 (2023) (threshold showing insufficient to support defendant’s motion for selective prosecution discovery).     
            In denying Defendants’ Motions, the Court nonetheless expresses concern about the RMD’s practice of entrusting the surveillance of social media accounts, particularly of juveniles, to a single officer without any established policies, internal procedural safeguards, or recordkeeping protocols – including records of when, why, and how Detective Sergeant Brewer connected with a specific account. I credit Sergeant Detective Brewer’s testimony regarding his use of the undercover account. I also credit Sergeant Detective Brewer’s testimony that significant aspects of the drug trade and portents of violent crime have migrated to social media and that minors are not exempt from such activity. The undercover account may thus provide an important tool in preventing and combatting crimes such as drug trafficking, gun violence, and school-related violence. Absent established procedures, however, such tools may be susceptible
--------------------------------------------
predicate evidence to justify discovery under Commonwealth v. Long, 485 Mass. 711 (2020) or its progeny.
                                                                        -14-
to arbitrary, haphazard, selective, or even biased deployment and thus, abuse. See Commonwealth v. Perry, 489 Mass. 436, 444 (2022) (“[W]hile we have acknowledged the usefulness of these tools in crime detection, we also have cautioned against allowing the power of technology to shrink the realm of guaranteed privacy (internal quotations omitted)”). Although Defendants have not met their burden to indicate an unlawful search or equal protection violation here, this decision does not imply that the RMD’s use of the undercover Snapchat account is immune from such challenges in future cases based on the requisite evidentiary showing.     
            Defendants have failed to raise a reasonable interference of impermissible discrimination, see Long, 485 Mass. at 717, or other grounds entitling them to discovery that could reveal the identity of the undercover account. Therefore, Defendants’ objections to the Court’s orders protecting information related to the account are, again, OVERRULED and their renewed requests for such discovery are DENIED. Defendants’ Motions to Suppress are also DENIED on this ground.
III. WIRETAP STATUTE
            Lastly, Defendants argue that the RMD’s review and preservation of their Snapchat posts violated the wiretap statute, G.L. c. 272, § 99, and warrants suppression. I disagree.
            The wiretap statute prohibits willful and secret listening or recording of oral and wire
                                                                        -15-
communications, [7] subject to certain exceptions not at issue here.[8] G.L. c. 272, §§ 99 B(4), C(1); Commonwealth v. Hearns, 467 Mass. 707, 714 (2014). Despite its broad terms, our courts do not apply an overly literal construction of that statute, which would prohibit large swaths of activity the Legislature did not intend to forbid. Commonwealth v. Rainey, 491 Mass. 632, 642 (2023), citing Commonwealth v. Gordon, 422 Mass. 816, 833 (1996). Rather, the proper scope of the wiretap statute is informed by the “Legislature’s focus [on] the use of devices, like bugs, for clandestine or surreptitious eavesdropping” on private conversations. Rainey, 491 Mass. at 646, 647. Thus, the wiretap statute only requires suppression of evidence derived from law enforcement’s secret, surreptitious recording of conversations that defendants intended to be private. Commonwealth v. Ashley, 82 Mass. App. Ct. 748, 762 (2012), citing Commonwealth v. Santoro, 406 Mass. 421, 423 (1990) (statute concerns “legitimate privacy interests of individuals in speech they wish to keep private”). “The statute delegates to the courts the task of striking the proper balance in each individual case.” Rivera, 445 Mass. at 124.     
            The wiretap statute has no application here. Sergeant Detective Brewer’s viewing of Defendants’ Snapchat posts and use of an iPhone or iPad to preserve them was not surreptitious eavesdropping within the meaning of the statute. Police did not initiate the recordings disseminated on Snapchat. Rather, Defendants initiated the recordings and photographs       
--------------------------------------------
[7] The video and photograph recordings at issue in this case largely consist of images, sometimes accompanied by a musical soundtrack. With five exceptions, only one of which includes the display of a purported firearm, the recording files in evidence do not contain oral statements or dialogue. The Massachusetts wiretap statute bars all clandestine audio recording by private individuals, with certain private and law enforcement exceptions. Curtatone v. Barstool Sports, Inc., 487 Mass. 655, 659 (2021), citing Commonwealth v. Rivera, 445 Mass. 119, 126 (2005). In contrast, police recording of a live video transmission has been found not to violate the wiretap statute because, “there is no statutory prohibition against recording purely visual images” (emphasis added). Commonwealth v. Rock, 83 Mass. App. Ct. 1134 (2013 unpublished). Whether the statute prohibits visual recordings, without an audio component, was raised recently in Commonwealth v. Du, but not resolved by the Appeals Court. 103 Mass. App. Ct. 469, 481 n.19 (2023). Because I decide the motion on other grounds, I decline to address whether visual recordings alone fall within the definition of “wire or oral communications” pursuant to G.L. c. 272, § 99.
[8] The Commonwealth has not argued that Sergeant Detective Brewer recorded Defendants’ Snapchat posts “in the course of an investigation of a designated offense” to fall within the one-party consent exception under G.L. c. 272, § 99(B)(4).
                                                                        -16-
themselves and then disseminated those recordings and photographs to a group that included the undercover account. See Curtatone, 487 Mass. at 658 (“If recordings are not made ‘secretly,’ they do not constitute an interception within the meaning of the act.”). Thus, this case is readily distinguishable from cases Commonwealth v. Du, 103 Mass. App. Ct. 469 (2023) and Commonwealth v. Moody, 466 Mass. 196 (2013), in which law enforcement interjected into a private communication and created a record that did not already exist. Cf. Rivera, 445 Mass. at 124 (finding no wiretap statute violation where “police had no part in making, inducing, soliciting, or otherwise encouraging or abetting the making of the surveillance tape. The tape … [simply] fell into their hands.”).[9]     
            Defendants’ Snapchat posts are “akin to a letter written in disappearing ink”, Carrasquillo, 489 Mass. at 122, computer files scheduled for automated erasure, or recorded messages that self-destruct. See United States v. Herrera, No. CR 1:21-MJ-02498-MBB, 2021 WL 2419609, at *1 (D. Mass. June 14, 2021). Defendants’ Snapchat posts are also akin to videos, photographs, and messages posted to “subscribers only” or “members only” Internet forums, message boards, and websites. Defendants advance an interpretation of the wiretap statute that would seemingly prohibit law enforcement from documenting evidence of file sharing of child pornography, live streams of criminal conduct, and other filmed and published depictions of criminal activity available on the internet. See, e.g., Commonwealth v. DeJesus, 489 Mass. 292, 298-299 (2022) (video posted on social media showing defendant holding firearm and posturing with it); Commonwealth v. Comenzo, 489 Mass. 155, 157 (2022) (child pornography images posted by defendant on Tumblr); Commonwealth v. Guastucci, 486 Mass.
--------------------------------------------
[9] Likewise, the reference in Du that a single communication may be intercepted at more than one instance rests on the fact that law enforcement initially obtained or “intercepted” the communication illegally. 103 Mass. App. Ct. at 479. Nothing in the wiretap statute or caselaw prohibits law enforcement from downloading, uploading, or otherwise acting to preserve a recording legally received from a private party, such as Defendants.
                                                                        -17-
22, 23 (2020) (digital child pornography image uploaded to Skype by defendant via file share program); Commonwealth v. Meola, 95 Mass. App. Ct. 303, (2019) (Facebook video of defendant’s genitals sent to minor child); Commonwealth v. Molina, 476 Mass. 388 (2017) (child pornography video from defendant’s computer via peer-to-peer file sharing program).     
            The SJC has explicitly warned against overly literal and myopic readings of the wiretap statute that would prohibit routine police conduct absent any language indicating such a legislative intent. See Rainey, supra. Nothing in the wiretap statute prohibits officers who receive recorded content disseminated in a digital or ephemeral medium from documenting, copying, retrieving, and/or preserving the content before it vanishes, or a defendant can destroy it. See Commonwealth v. Brandwein, 435 Mass. 623, 630-632 (2002) (“Nothing in our law” prevents police from acting on confidential information disclosed to them).   
            Sergeant Detective Brewer did not secretly record Defendants; he preserved recordings Defendants disseminated to him. Moreover, regardless of their ephemeral nature, Defendants’ Snapchat posts were not private communications. As discussed above, Defendants’ voluntary and deliberate acts of sharing posts, available for 24 hours, to an unknown individual belies any claim that they held legitimate privacy interests in the posts.
            Defendants’ Motions to Suppress are DENIED on this ground.
                                                                        -18-
CONCLUSION AND ORDER
            For the above reasons, Defendants’ objections to the scope on cross-examination of Detective Sergeant Brewer are OVERRULED, Defendants’ renewed requests for discovery pertaining to the Randolph Police Department’s undercover Snapchat account are DENIED, and Defendants’ Motions to Suppress are DENIED.
/s/Sara Weyland Ellis
Hon. Sarah Weyland Ellis
Justice of the Superior Court
January 8, 2024